584 A.2d 372

**H. Jane DEITRICH, Widow of George W. Deitrich, Deceased, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (SHAMOKIN CYCLE SHOP), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 21, 1990.

Decided Dec. 10, 1990.

George J. Nagle, Shamokin, for petitioner.

Robert P. Wilkison, Sunbury, for respondent.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

Helen Jane Deitrich (Claimant), widow of George W. Deitrich (Decedent), petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which reversed a referee's decision granting Claimant benefits pursuant to her fatal claim petition. We reverse.

Decedent, who was sixty-one years old at the time of his death, worked at Shamokin Cycle Shop (Employer) for approximately forty years. On June 2, 1986, at approximately 10:00 a.m., Decedent called for assistance while coasting a riding tractor down a wooden ramp placed on the back of a customer's pick-up truck. A co-worker came to Decedent's assistance and together they removed the tractor from the truck. Decedent immediately began sweating, became pale and complained that he was suffering from what he thought was gas or indigestion. Decedent did not work the rest of the morning and did not return to work in the afternoon. He continued to complain of indigestion throughout the evening and went to bed at approximately 11:00 p.m. At approximately 2:00 a.m., Claimant found Decedent sprawled across their bed. No autopsy was performed and no physician saw Decedent at the time of his death.

On August 11, 1986 Claimant filed a fatal claim petition alleging that Decedent died at approximately 2:30 a.m. on June 3, 1986 of a myocardial infarction which occurred as a

result of Decedent's employment. At the hearing, Claimant testified and also presented the testimony of Decedent's son, the testimony of a co-worker, and the testimony of a customer who was present when Decedent unloaded the tractor. Before the referee, Claimant introduced into evidence the deposition testimony of Sudhir K. Khanna, M.D. (Khanna), a physician specializing in internal and critical care medicine. Employer presented the testimony of Decedent's aunt [1] and produced the deposition testimony of John David Marcel Judge, M.D. (Judge), a physician specializing in internal medicine and board eligible in cardiology.[2] The referee accepted Khanna's testimony, found that Decedent died as a result of a myocardial infarction, granted Claimant's fatal claim petition and awarded benefits as of June 3, 1986.

Employer appealed to the Board which reversed on the basis that Khanna's testimony was equivocal and thus legally insufficient to establish a causal connection between Decedent's death and his employment. The Board concluded that Khanna's use of the phrases "most likely," and "probably," rendered his testimony insufficient to unequivocally establish a causal relationship between Decedent's death and his activity at work.

On appeal, Claimant contends that Khanna's testimony was unequivocal and therefore that the referee's findings of fact and conclusions of law are supported by substantial evidence. Claimant also contends that the Board erred in reversing the referee without hearing new evidence. Our scope of review where both parties present evidence before the agency is limited to determining whether constitutional rights have been violated, whether an error of law has been committed by the agency, or whether

1. Myrtle Sanzado, Decedent's aunt, testified that she was present when Decedent arrived for work on June 2, 1986 and that he stated that he had a little indigestion.

2. Judge testified that, without an autopsy he could not say, with any reasonable degree of medical certainty, what caused Decedent's death. Judge further testified that there were other competing probable causes in this case such as cardiomyopathy or pulmonary embolism.

necessary findings of fact are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

■ With regard to Khanna's testimony, the referee made the following necessary findings of fact:

8. Your Referee has carefully considered all of the medical testimony presented in this matter, and accepts the opinion of Dr. Khanna, that the claimant died as the result of a myocardial infarction, and that his employment was the precipitating factor in bringing about his myocardial infarction. (Tr. Khanna, pp. 19, 20).

9. Your Referee found significant the following portion of Dr. Khanna's testimony in arriving at this Finding of Fact:

MR. NAGLE: Doctor, in that case, I will ask you what in your professional opinion based on reasonable medical certainty was the cause of this myocardial infarction?

THE WITNESS: Most likely the event started at work when he engaged in a heavy physical activity. That is usually a precipitating factor or a precipitating cause in evolution of an acute myocardial infarction. Acute myocardial infarction is not an on and off process. It is a perpetuating process. A patient may start at a given time and may eventually evolute [sic] into having a myocardial infarction. Anyway, in this particular patient, I think the heavy physical activity, particularly the isometric type of contraction. [sic] When there is sustained pressure, I think it is a significant factor in the evolution of myocardial infarction. Now, this patient does have a history of smoking and mild obesity, but there is no other significant preexisting cardiovascular disease according to what testimony I have, including hypertension or really a significant family history.

Second and third, these additives of having cardiovascular problems at a later age group is not a significant

risk factor in a patient, so if I have to summarize, I will have to say that a heavy physical exertion at work during those particular two, three hours, was the precipitating factor in evolution of his myocardial infarction.

Q. Would the fact that he had immediate complaints according to the record after this isometric contraction further support your position?

A. Yes. This is a fairly typical history of an acute myocardial infarction, that a patient with an unusual physical activity complains of severe chest pain, shortness of breath, air hunger and becomes sweaty like he became, diaphoretic. This is a classical history of an acute myocardial infarction.

Q. Doctor, in your experience then, would you consider it unusual that he lived for approximately fourteen more hours?

A. No, this is not usual. Approximately forty percent patients die within the first two hours of an acute myocardial infarction. (Tr. Khanna, pp. 19, 20, 21)

10. Your Referee further finds that there is a direct, obvious, causal relationship between the arduous physical activity performed by the decedent on June 2, 1986, and his immediate development of chills sweating and indigestion, all of which are classic symptoms of a myocardial infarction as testified to by Dr. Khanna.

11. The defendant has raised a number of objections to Dr. Khanna's testimony. The first objection is that the hypothetical question does not accurately represent the record in this case. Your Referee has carefully considered the hypothetical question, and compared it to the testimony given by the various witnesses in this case, and finds that the hypothetical question was based upon matters which appear in the record and upon facts warranted by the evidence. See *Borough of Morrisville vs. Workmen's Compensation Appeal Board (Grant)*, 419 A.2d 813 (1980).

. . . .

Finally, the defendant contends that Dr. Khanna's testimony is equivocal. Your Referee finds this final argument to also be without merit. Your Referee has considered all of Dr. Khanna's testimony, and finds the aforementioned cited portion of his testimony sufficient to establish a causal relationship between the decedent's employment and his myocardial infarction. Although Dr. Khanna testified that there were other possible causes of death, he consistently maintained his opinion on cross-examination that the decedent died as a result of a myocardial infarction. Medical testimony need not be given with unqualified certainty in heart attack cases, but rather that such medical evidence of record "taken as a whole" must be of an unequivocal nature. The fact that the physician used the word "probably" at different points during his testimony does not necessarily render otherwise unequivocal testimony equivocal. *City of Newcastle vs. Workmen's Compensation Appeal Board,* 441 A.2d 803 (1982).

Referee's Decision, August 26, 1988, at 3–5.

In *Krawchuk v. Philadelphia Electric Company,* 497 Pa. 115, 439 A.2d 627 (1981) our Supreme Court noted that The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 1–1031, was intended to benefit the Pennsylvania worker and must be liberally construed to effectuate its humanitarian objectives. *Id.,* 497 Pa. at 120, 439 A.2d at 630. In *City of New Castle v. Workmen's Compensation Appeal Board,* 65 Pa. Commonwealth Ct. 25, 441 A.2d 803 (1982) this Court noted that medical testimony need not be given with unqualified certainty in heart attack cases but rather that such medical evidence of record, taken as a whole, must be of an unequivocal nature. The mere absence of the magic words "his work caused his heart attack" should not preclude the recovery of benefits. *Id.,* 65 Pa.Commonwealth Ct. at 28, 441 A.2d at 805.

Furthermore, medical experts are not required to apply legal standards to the facts contained in their testimony; they need only testify that they believe or think that

the facts exist. *Williams v. Workmen's Compensation Appeal Board (Montgomery Ward),* 127 Pa.Commonwealth Ct. 587, 562 A.2d 437 (1989). In *City of Wilkes–Barre v. Workmen's Compensation Appeal Board,* 54 Pa.Commonwealth Ct. 230, 420 A.2d 795 (1980), this Court noted that use of the words "most likely," "probably," and "somewhat" will not render medical testimony equivocal in heart attack cases if the medical testimony, read in its entirety, is unequivocal. *Id.,* 54 Pa.Commonwealth Ct. at 233–235, 420 A.2d at 797–798. Accordingly, we find Khanna's opinion to be unequivocal.

■ Alternatively, Employer contends that in the event this Court finds Khanna's testimony to be unequivocal, the Board should be affirmed on the ground that Khanna's opinion relied on the use of a hypothetical question which assumed numerous facts either not in the record or specifically stricken from the record. Employer argues that the hypothetical question directed to Khanna included the following stricken information and factually erroneous assumptions: (1) that reference was made to the cause of death listed on Decedent's death certificate (myocardial infarction) despite two prior rulings by the referee that the death certificate was admitted only to reflect the date and time of death; (2) that reference was made to the funeral director's remark that "[i]t was a heart attack;" (3) that Decedent's sister died of a stroke when actually it was his mother who died of a stroke; (4) that Decedent's mother died of a heart attack when actually it was his grandmother; (5) that Decedent placed the wooden ramps on the truck when actually it was unknown who placed the ramps on the truck; (6) that Decedent stated that he was considering going to Shamokin Hospital when actually he did not specify where he was considering going; and (7) that the supper eaten by Decedent consisted of a light lunch when actually it was a normal supper which he did not finish. Employer therefore contends that, as a result of these facts not being in the record, Khanna's testimony is rendered incompetent.

It is well settled that hypothetical questions must be based upon matters which appear of record and on facts

which are warranted by the evidence. *Borough of Morrisville v. Workmen's Compensation Appeal Board,* 54 Pa. Commonwealth Ct. 41, 419 A.2d 813 (1980). However, in *Morrisville,* this Court noted that, when only a portion of a medical witness' testimony is given in response to a hypothetical question and there is other unequivocal testimony sufficient to sustain the referee's finding of a causal connection, the referee's finding must be sustained. *Id.,* 54 Pa.Commonwealth Ct. at 48, 419 A.2d at 817.

In the present case, the referee's findings indicate that he relied on Khanna's testimony that Decedent's work activity (restraint of the falling tractor which caused isometric contractions) and resultant symptoms (severe chest pain, shortness of breath and air hunger) prior to his death were all classic signs of a myocardial infarction. Neither Khanna in his testimony nor the referee in his findings, relied on the death certificate, the funeral director's remark or the other factual assumptions to which Employer objects.[3] Consequently, in accordance with *Morrisville* we conclude that there is sufficient competent unequivocal testimony to support the referee's finding that Khanna's testimony established a direct, obvious, causal relationship between Decedent's physically arduous activity at work on June 2, 1986 and his death that evening from a myocardial infarction.

Having found that the Board erred in holding Khanna's testimony to be equivocal, we need not address Claimant's contention that the Board erred in reversing the referee's decision without taking any additional evidence. The order of the Board is reversed and the decision of the referee is reinstated.

## ORDER

AND NOW, this 10th day of December, 1990, the order of the Workmen's Compensation Appeal Board in the above-

---

3. A review of Khanna's deposition testimony indicates that Employer's counsel, during cross-examination of Khanna, failed to question Khanna as to whether he relied on the death certificate, funeral director's remark, or any other factual assumption in the hypothetical. *See* Khanna Deposition, dated December 4, 1987, at 21–28, 30.

566

captioned proceeding is reversed and the decision of the referee is reinstated.